IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE:<br><br>ACCEPTANCE INSURANCE COMPANIES INC.,<br><br>          Debtor. | Case No. 05-80059<br><br>Chapter 11 |
| ACCEPTANCE INSURANCE COMPANIES INC.,<br><br>          Debtor,<br><br>v.<br><br>GRANITE REINSURANCE COMPANY LTD.,<br><br>          Defendant. | Adv. Pro. No. 06-_____<br><br>**COMPLAINT AND AMENDED OBJECTION TO CLAIM** |

COMES NOW Acceptance Insurance Companies Inc. (hereinafter "Debtor") and for its cause of action against the defendant, Granite Reinsurance Company, Ltd. ("Granite Re"), and its amended objection to the claim filed by Granite Re, docketed as claim no. 137, seeking $10,875,363 (the "Granite Re Claim"), hereby states as follows:

**PARTIES, JURISDICTION & VENUE**

1.    Debtor is a corporation incorporated under the laws of the State of Delaware having its principal place of business in the State of Iowa.

2.    Defendant, Granite Re, is a corporation incorporated under the laws of the country of Barbados and has its principal place of business in the country of Bermuda.

3. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334

4. This is a core proceeding under 28 U.S.C. § 157(b)(2).

5. Venue of the Debtor's Chapter 11 case and this Complaint are proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**FACTS**

6. Debtor intended that, pursuant to a written reinsurance contract ("Contract") (a true and correct copy of which is attached), Granite Re would provide reinsurance to Debtor and Debtor's subsidiary, American Growers Insurance Company ("American Growers'), in consideration for Debtor's agreement to pay $15 million in insurance premiums, $6,000,000 payable up front for crop years 2001 and 2002, and $3,000,000 payable each January 1 of years 2003, 2004 and 2005 for, respectively, crop years 2003, 2004 and 2005.

7. Pursuant to the Contract, Debtor paid Granite Re $6 million on or about June 6, 2001. Debtor intended this $6 million payment would be a premium payment for reinsurance it believed Granite Re had agreed to provide for crop years 2001 and 2002.

8. Under the terms of the Contract, and unbeknownst to Debtor, Granite Re did not agree to provide any reinsurance to Debtor and/or American Growers. In particular, in light of the definitions contained in Article 9 of the Contract, there is no circumstance pursuant to which Granite Re ever could be required to pay any reinsurance claim under the Contract.

9. Debtor's payment of $6 million to Granite Re was made based on Granite Re's purported binding legal obligation to provide reinsurance.

10. Due to a lack of consideration to support the Contract, there was no binding agreement between the parties.

11. Granite Re received $6 million from Debtor in 2001 which Granite Re did not deserve and it would be unjust for Granite Re to retain the $6 million Debtor paid it.

### COUNT I – ASSUMPSIT FOR MONEY HAD AND RECEIVED

12. Debtor reincorporates paragraphs 1 through 11 as though fully stated herein.

13. Debtor pursues remedies available under the substantive common-law claim of assumpsit for money had and received for the unearned financial benefits that enriched Granite Re at the expense of Debtor as a result of a lack of consideration to support the Contract.

14. Granite Re received substantial financial benefits (totaling $6 million) per the Contract.

15. Granite Re's benefit was at the expense of Debtor, which paid $6 million for no benefit in return.

16. The retention by Granite Re of the $6 million paid it would constitute a substantial windfall and be inappropriate under the circumstances.

17. Accordingly, in the interest of justice, Granite Re should be compelled to repay Debtor the unearned benefit of $6 million it received per the purported Contract.

### COUNT II – UNJUST ENRICHMENT

18. Debtor incorporates paragraphs 1 through 17 as though fully stated herein.

19. The retention by Granite Re of the $6 million paid it would constitute a substantial windfall and be unjust under the circumstances.

20. Accordingly, to avoid an unjust enrichment, Granite Re should be compelled to repay the debtor the unearned benefit of $6 million it received per the purported Contract.

### COUNT III – RESCISSION (In the Alternative)

21. Debtor reincorporates paragraphs 1 through 20 (except paragraph 10) as though fully stated herein.

22. The very object of the Contract was for Granite Re to provide reinsurance to Debtor and Debtor's subsidiary in return for payment of premiums.

23. A material failure of consideration to support the Contract occurred when, under the terms of the Contract and unbeknownst to Debtor, Granite Re did not agree to provide any reinsurance to Debtor and/or American Growers.

24. This failure of consideration caused the object of the Contract, namely reinsurance for the Debtor and/or American Growers, to be defeated.

WHEREFORE, Debtor prays for relief as follows:

A) For an order declaring no contract was formed between Debtor and Granite Re and granting Debtor restitution or, alternatively, an order granting rescission of the Contract in favor of the Debtor and for an award compelling the repayment the $6 million paid Granite Re, plus interest;

B) For an award in favor of Debtor for all reasonable costs and expenses incurred in this action by Debtor; and

C) For such other and further relief as this Court may deem just and appropriate.

## AMENDED OBJECTION TO GRANITE RE CLAIM

25. Debtor reincorporates paragraphs 1 through 24 as though fully stated herein.

26. After November 2002, the only subsidiary of Debtor in the business of writing federally reinsured crop insurance, American Growers Insurance Company ("American Growers"), was legally barred from providing crop insurance; any purported promise of stop loss reinsurance therefore was illusory, of no benefit to the Debtor and of no detriment to Granite Re.

27. On November 22, 2002, the Risk Management Agency of the USDA, the federal agency charged with overseeing federal crop insurance business in the United States ("RMA"), ordered that American Growers cease and desist the selling of any new crop insurance, and directed that all agents involved with the sale and servicing of such policies be notified of same.

28. Also on November 22, 2002, the Nebraska Department of Insurance ("The Department") placed American Growers under supervision of the Department.

29. On November 25, 2002, the Debtor filed a Form 8-K with the Securities Exchange Commission explaining, among other things, the Department's action, and confirming it would implement the Department's order not to "undertake, engage in, commit to, initiate, accept or renew any insurance business."

30. On December 20, 2002, an Order of Rehabilitation and Order of Injunction were entered against American Growers (the "Order of Rehabilitation"). The Order of Rehabilitation, among other things, (a) transferred to the Rehabilitator all the powers of the directors, officers and managers of American Growers, (b) authorized the Rehabilitator to take possession of and administer all assets of American Growers and (c) enjoined American Growers from "the transaction of further business. . . except as directed by the Rehabilitator," and from "the transfer of American Growers' assets and property."

31. As of November 2002, therefore, the Debtor no longer could issue insurance, and the Department was responsible for conducting the affairs of American Growers.

32. Granite Re knew or should have known these legal actions, which were publicly available on the Department of Insurance website, and in the Debtor's filings before the Securities Exchange Commission, during November and December 2002.

33. The Debtor is entitled to the disallowance of the Granite Re Claim because of:

a. a lack of consideration;

b. a failure of consideration;

c. the doctrine of commercial frustration in that (i) the purpose of the Contract was to provide stop loss reinsurance to American Growers for crop insurance policies; and (ii) after 2002, American Growers was legally barred from providing crop insurance, which supervening event frustrated the commercial purpose behind the Contract;

d. the doctrine of frustration of purpose in that (i) the purpose of the Contract was to provide stop loss reinsurance to American Growers for crop insurance policies; and (ii) after 2002, American Growers was legally barred from providing crop insurance, and this supervening event frustrated the purpose of the Contract;

e. the doctrine of impracticality because performance of the Contract by either party was impractical where American Growers no longer provided crop insurance after 2002;

f. the doctrine of laches because Granite Re had knowledge of Debtor's nonpayment of premiums in 2003 but unreasonably delayed asserting this fact or taking any action thereon for an excessive period of time and the Debtor has suffered prejudice therefrom;

g. the fact that Granite Re has failed to mitigate its avoidable and foreseeable damages in that Granite Re had no cause to maintain coverage under the Contract after the Debtor failed to pay the premiums for such coverage;

h. the doctrine of avoidability because any damages alleged by Granite Re were foreseeable and avoidable;

i. the doctrine of impossibility because after 2002, American Growers no longer provided crop insurance, thus making the reinsurance of such insurance impossible;

j. the doctrine of waiver to the extent Granite Re actually provided reinsurance for three additional years after learning it knew the Debtor made no payment of premiums; and

k. the doctrine of mistake in regards to whether the Contract provided reinsurance.

WHEREFORE, Debtor prays for relief and judgment as follows:

A) For an order disallowing and expunging the Granite Re Claim;

B) For an award in favor of Debtor for all reasonable costs and expenses incurred in this action by Debtor; and

C) For such other and further relief as this Court may deem just and proper.

Dated this 26th day of October, 2006.

ACCEPTANCE INSURANCE
COMPANIES INC., Debtor

By: /s/ *John J. Jolley, Jr.*
Patrick B. Griffin #18072
Thomas J. Kenny #20022
John J. Jolley, Jr. #20726
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102
(402) 346-6000