**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. BK05-80059 |
| | ) | |
| ACCEPTANCE INSURANCE COMPANIES | ) | CHAPTER 11 |
| INC. | ) | |
| | ) | |
| Debtor . | ) | |
| _____ | ) | |

**GRANITE REINSURANCE COMPANY'S**

**DISCLOSURE STATEMENT**

**FOR ACCEPTANCE INSURANCE COMPANIES, INC.**

**DATED FEBRUARY 9, 2009**

Robert F. Craig #10819
Jenna Taub #22725
Robert F. Craig, P.C.
1321 Jones Street
Omaha, NE  68102
Phone:  (402) 408-6000
Fax:  (402) 408-6001

COUNSEL FOR GRANITE REINSURANCE COMPANY

# TABLE OF CONTENTS

**ARTICLE I: Introduction** ................................................................ **6**

**ARTICLE II: Voting Procedures, Ballots And Balloting Deadline.** ........................... **6**

**ARTICLE III: Confirmation Hearing** ........................................................ **9**

**ARTICLE IV: History and Structure of the Debtor.** .................................... **9**

**ARTICLE V: The Enterprise Economics.** ................................................ **10**

**ARTICLE VI: Additional Events Leading to Chapter 11.** ........................................ **11**

**ARTICLE VII: The Chapter 11 Case.** ........................................................ **12**

**ARTICLE VIII: Claims of the Trust Preferred Securities Holders.** ........................ **13**

**ARTICLE IX: Summary of the Plan.** ........................................................ **14**

**Article X: Treatment of Claims and Interests and Summary of Distributions Under the Plan.** ....................................................... **16**

**Article XI: Withholding and Reporting Requirments.** ............................... **17**

**ARTICLE XII: Funding for the Plan.** ...................................................... **18**

**ARTICLE XIII: Closing of the Chapter 11 Case.** ...................................... **20**

**ARTICLE XIV: Rights of Action.** ............................................................ **20**

**ARTICLE XV: Treatment of Executory Contracts and Unexpired Leases.** ........... **21**

**ARTICLE XVI: Disputed, Contigent and Unliquidated Claims.** ........................... **21**

**Article XVII: Estimation.** ................................................................... **22**

**ARTICLE XVIII: Payment of Certain Administrative Expense Claims, Fees and Expenses.** ........................................................... **23**

**ARTICLE XIX: Modifications of the Plan; Severability of Plan Provisions.** .......... **24**

**ARTICLE XX: Confirmation of the Plan.** ............................................... **25**

**Article XXI: Best interests of Holders of Claims and Interest.** ................................ **28**

**ARTICLE XXII: Financial Feasibility.** ....................................................................... 29

**ARTICLE XXIII: Acceptance by Impaired Classes.** ................................................. 30

**ARTICLE XXIV: Cram Down.** ..................................................................................... 30

**ARTICLE XXV: Classifications of Claims and Interests.** ......................................... 31

**ARTICLE XXVI: Effect of Confirmation of the Plan.** .............................................. 31

**ARTICLE XXVII: Certain Factors to be Considered.** .............................................. 33

**ARTICLE XXVIII: Conclusion.** ................................................................................... 35

## TABLE OF APPENDICES

Appendix A     Summary of Schedules

Appendix B     Debtor's year-end Operating Reports

Appendix C     Liquidation Analysis for the Debtor (to be provided at a later date)

Appendix D     Statutory Statement – Acceptance Insurance Company, September 30, 2008

**DISCLAIMER**

THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING THE PLAN OF REORGANIZATION, AS FILED OR SUBSEQUENTLY MODIFIED, DATED FEBRUARY 9, 2009 (AS MAY BE FURTHER AMENDED OR MODIFIED, THE "PLAN"). NO REPRESENTATIONS HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT CONCERNING THE DEBTOR, ITS BUSINESS OPERATIONS OR THE VALUE OF ITS ASSETS, EXCEPT AS EXPLICITLY SET FORTH IN THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE CHAPTER 11 CASE AND FINANCIAL INFORMATION. THIS DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN OR SUCH STATUTORY PROVISIONS, DOCUMENTS OR FINANCIAL INFORMATION, BUT IS RATHER INTENDED ONLY TO AID AND TO SUPPLEMENT SUCH REVIEW. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE. IN THE EVENT OF A CONFLICT BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN SHALL GOVERN.

ALL HOLDERS OF ALLOWED CLAIMS IN VOTING CLASSES ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO READ CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL APPENDICES ANNEXED HERETO, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR TO REJECT THE PLAN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, AND THE DELIVERY OF THIS

DISCLOSURE STATEMENT SHALL NOT, UNDER ANY CIRCUMSTANCES, CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME SUBSEQUENT TO THE DATE HEREOF. THE PROPONENT DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE BANKRUPTCY RULES AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS OR INTERESTS OF THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED. HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.  EACH SUCH HOLDER SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND BECOMES EFFECTIVE, ALL HOLDERS OF CLAIMS AND INTERESTS (INCLUDING THOSE WHO REJECTED OR WHO ARE DEEMED TO HAVE REJECTED OR ACCEPTED THE PLAN AND THOSE WHO DID NOT SUBMIT BALLOTS TO ACCEPT OR TO REJECT THE PLAN) SHALL BE BOUND BY THE TERMS OF THE PLAN.

## ARTICLE I:
### Introduction

<u>General</u>

Section 1.01    Granite Reinsurance Company, (herein "Granite Re" or "Proponent") hereby proposes the following disclosure statement (the "Disclosure Statement") pursuant to section 1125 of the Bankruptcy Code, for use in the solicitation of votes for its Plan of Reorganization, (as may be further amended or modified, the "Plan").

Section 1.02    This Disclosure Statement sets forth certain information regarding the Debtor's operations and finances, the events resulting in the Debtor's filing Chapter 11 for protection and the proposed allocation of the Debtor's assets. This Disclosure Statement also describes the terms and provisions of the Plan, including potential alternatives to the Plan, certain effects of confirmation of the Plan and the distributions proposed to be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that the holders of Allowed Claims and Allowed Interests in the Voting Classes must follow for their votes to be counted.

**CAPITALIZED TERMS USED AND NOT DEFINED HEREIN SHALL HAVE THE MEANING ASCRIBED TO THEM IN THE PLAN UNLESS THE CONTEXT REQUIRES OTHERWISE.**

Section 1.03    The Bankruptcy Court has approved this Disclosure Statement as containing "adequate information" in accordance with section 1125(b) of the Bankruptcy Code to enable a hypothetical, reasonable investor holding an Allowed Claim in each of the relevant Voting Classes to make an informed judgment about the Plan.

## ARTICLE II.
### Voting Procedures, Ballots and Balloting Deadline

Section 2.01    Under the Plan, all holders of Impaired Allowed Claims and Interests are entitled to vote on the Plan. Holders of Claims that are Unimpaired under the Plan are

deemed to have accepted the Plan. For a description of the Classes of Claims and Interests and their treatment under the Plan, see Section 9.08, Treatment of Claims and Interests

**ALL VOTES TO ACCEPT OR TO REJECT THE PLAN MUST BE CAST BY USING THE BALLOT FORM ENCLOSED WITH THIS DISCLOSURE STATEMENT.**

Section 2.02   In order for a Ballot to be counted, it must be completed, signed and sent so as to be received by the Balloting Deadline to Proponent's Counsel:

> Robert F. Craig, P.C.
>
> 1321 Jones Street
> Omaha, NE 68102
> Phone: (402) 408-6000
> Fax:     (402) 408-6001

ONLY PROPERLY COMPLETED AND SIGNED BALLOTS RECEIVED BY PROPONENT'S COUNSEL PRIOR TO THE BALLOTING DEADLINE WILL BE COUNTED FOR PURPOSES OF DETERMINING WHETHER EACH VOTING CLASS HAS ACCEPTED THE PLAN. ANY BALLOTS RECEIVED AFTER THE BALLOTING DEADLINE WILL NOT BE COUNTED, NOR WILL ANY BALLOTS RECEIVED BY FACSIMILE OR ELECTRONIC MAIL BE COUNTED

Section 2.03    Debtor's Counsel will prepare and file with the Bankruptcy Court a certification of the results of the balloting with respect to the Plan.

Section 2.04    Your vote on the Plan is important. The Bankruptcy Code requires as a condition to confirmation of a plan of reorganization that each class that is Impaired under such plan vote to accept such plan, unless the "cram down" provisions of the Bankruptcy Code are employed. The Proponent has reserved the right to seek to "cram down" the Plan on non-accepting Impaired Classes of Claims and Interests. See Article XXIV, Cram Down

Section 2.05    Voting Multiple Claims.  Any person who holds Allowed Claims in more than one Voting Class is required to vote separately with respect to each such Voting Class in which such person holds an Allowed Claim.  Please use a separate Ballot to vote all Allowed Claims in each Voting Class

Section 2.06    Incomplete Ballots.  Any Ballot received that is not signed or does not indicate either an acceptance or a rejection of the Plan shall be an invalid Ballot and shall not be counted for purposes of determining acceptance or rejection of the Plan.

Section 2.07    Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots will be determined by the Proponent in its sole discretion, whose determination will be final and binding.  Unless the Ballot being furnished is timely submitted to the Proponent by the Balloting Deadline, together with any other documents required by such Ballot, the Proponent may, in its sole discretion, reject such Ballot as invalid and, therefore, decline to use it in connection with seeking confirmation of the Plan by the Bankruptcy Court. In the event of a dispute with respect to a Ballot, any vote to accept or reject the Plan cast with respect to such Ballot will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Bankruptcy Court orders otherwise. The Proponent reserves the right to reject any and all Ballots not in proper form. The Proponent further reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. The interpretation (including the Ballot and the respective instructions thereto) by the Proponent, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties. Unless waived, any defects or irregularities in connection with delivery of a Ballot must be cured within such time as the Proponent (or the Bankruptcy Court) determines. Neither the Proponent nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

# ARTICLE III.
## Confirmation Hearing

Section 3.01    The Bankruptcy Court will hold a hearing regarding confirmation of the Plan (the "Confirmation Hearing") at the United States Bankruptcy Court, Roman L. Hruska United States  Courthouse, Suite 1125 111 South 18th Plaza Omaha, NE 68102, before Bankruptcy Chief Judge Timothy J. Mahoney. The Confirmation Hearing may be adjourned from time to time without further notice other than by announcement in the Bankruptcy Court on the scheduled date of such hearing. At the Confirmation Hearing, the Bankruptcy Court will (i) determine whether the requisite vote has been obtained for each of the
Voting Classes, (ii) hear and determine objections, if any, to the Plan and to confirmation of the Plan that have not been previously disposed of, (iii) determine whether the Plan meets the confirmation requirements of the Bankruptcy Code, and (iv) determine whether to confirm the Plan.

Section 3.02    Any objection to the confirmation of the Plan must be in writing and must comply in all respects with the Notice accompanying this Disclosure Statement.

**THE PROPONENT SUPPORTS CONFIRMATION OF THE PLAN AND URGES ALL HOLDERS OF ALLOWED CLAIMS AND ALLOWED INTERESTS IN THE VOTING CLASSES TO ACCEPT THE PLAN.**

# ARTICLE IV.
## History and Structure of the Debtor

Section 4.01    The Debtor, AICI, is a Delaware corporation with its principal place of business in Iowa. It is the parent company of Acceptance Insurance Company, a Nebraska corporation whose principal place of business is in Iowa ("Acceptance"), and of American Growers Insurance Company, a Nebraska corporation ("American Growers"). The Debtor is an insurance holding company that is not a licensed insurer and does not issue insurance policies. Acceptance was primarily a property and casualty insurance company that sometimes issued crop insurance policies. American Growers was exclusively a crop insurance company.

Section 4.02    Due to significant financial losses, on December 20, 2002, American Growers was placed in statutory rehabilitation. On February 28, 2003, it was placed in statutory liquidation. American Growers ceased issuing insurance policies upon the entry of the order for supervision. The Nebraska Department of Insurance also placed Acceptance under supervision on December 20, 2002.  Acceptance stopped writing

insurance in the fourth quarter of 2001, except for a few small policies which were issued in 2002.

Section 4.03    On January 7, 2005, the Debtor filed its chapter 11 petition in the District of Nebraska.

Section 4.04    On April 10, 2008, the Nebraska Director of Insurance requested and the Lancaster County, Nebraska District Court ordered that Acceptance be placed in formal rehabilitation proceedings.

## ARTICLE V.
## The Enterprise Economics

Section 5.01    AIC generates investment income from approximately $50,000,000 of cash and bonds yielding an estimated $2.5 million annually. Historically this income has been used to pay for staff and the third party administration of its claims run off.

Section 5.02    The Proponent believes that, as a result of very conservative claims reserving practices at AIC there are significant claims redundancies in that company.  As those redundancies are realized AIC's capital and surplus will be increased making it an attractive target for acquisition

Section 5.03    Gross claims reserves at AIC total $57,926,000.  Of that amount the company reinsures approximately $40,304,000 reducing net reserves on the books of AIC to $17,623,000.   In addition to the net claims reserves of $17,623,000 the company has reserves for claims administration of approximately $18,000,000, an amount that Proponent believes is too great and results in an artificial reduction of AIC's capital and surplus.  Aggressive claims resolution should reduce much of the Loss Administration reserves and free up approximately $18,000,000 of value

Section 5.04    Proponent believes that the current cost to run AIC is substantially greater than it should be considering the small number of open claims.  Working with the AIC rehabilitator the Responsible Officer, whose functions and authority is described below, can assist in reduction of those costs.

Section 5.05    The Plan which this Disclosure Statement accompanies contemplates the appointment of a Responsible Officer to replace current management for AICI who will work with the rehabilitator for AIC to improve operating efficiencies and pursue qualified entities to acquire Debtor's insurance subsidiary as well as working with the Nebraska Department of Insurance to structure a stock transaction in order to maximize the value of both tangible and intangible values in AIC and AICI.

# ARTICLE VI.
## Additional Events Leading To Chapter 11

Section 6.01    In addition to the regulatory actions outlined above, Debtor's Statement of Financial Affairs filed when this case was initiated also identified a number of items of material litigation summarized as follows, with current status data to the extent available.

Section 6.02    The Takings Claim.  In November 2002, Debtor and Rain and Hail L.L.C. ("Rain and Hail") entered into a letter of intent under which Rain and Hail was to purchase certain American Growers assets.  The Office of Risk Management, or the Risk Management Agency ("RMA") advised it would not approve the transaction and subsequently enjoined American Growers from writing any new or renewal business.  On December 9, 2003, Debtor filed a complaint against the United States of America in the United States Court of Federal Claims.  Debtor contended that this action effected a taking of Debtor's property for public use without just compensation in violation of the Fifth Amendment to the United States Constitution, asserting damages of not less than $21.5 million plus costs and attorneys' fees.  This litigation has been concluded without recovery by the Debtor

Section 6.03    The Granite Re Litigation.  On April 15, 2004, Granite Re filed an action against the Debtor in the U.S. District Court for the Southern District of Indiana asserting a claim of 9.0 million owed pursuant to the terms of a contract of reinsurance.  As a result of the filing of this chapter 11 case Granite Re filed a proof of claim on May 6, 2005 for approximately $10.9 million, which was the balance of the premium due under the reinsurance contract plus interest.  On September 22, 2005, Granite Re also filed a complaint against Acceptance in the U.S. District Court for the District of Nebraska which sought $9 million in unpaid reinsurance premiums plus interest.  On October 26, 2006, the Debtor brought a complaint against Granite Re that sought return of the $6 million it had paid Granite Re for reinsurance coverage under the same contract.  All three contests were joined for trial.

Section 6.04    The trial court ruled that Acceptance and the Debtor were not responsible for the $9 million balance owed on the reinsurance contract because the premium was due on an annual basis and only in the years in which the debtor faced potential losses in its MPCI insurance business.  Granite Re appealed and Acceptance cross-appealed this judgment. On the basis of these same findings, the bankruptcy court sustained the debtor's objection to Granite Re's claim in bankruptcy case number 05-80059. Granite Re appealed and the debtor cross appealed this judgment. Finally, the court found that Granite Re was entitled to retain the initial $6 million premium payment because the reinsurance contract did not lack consideration. The court entered judgment for Granite Re in adversary proceeding number 06-08115 and dismissed the debtor's complaint. The debtor appealed from this judgment.

Section 6.05    On March 12, 2008 the 8th Circuit Bankruptcy Appellate Panel entered Judgment as follows:

(a)   the disallowance of Granite Re's claim against Debtor was reversed;

(b)   the judgment in favor of Granite Re on the claim seeking return of the $6.0 million previously paid to it was affirmed;

(c)   the trial court's determination that Acceptance was liable for the insurance premium was affirmed as to liability but reversed to the extent it found that liability to be zero.

Section 6.06   Debtor and Acceptance appealed the decision of the BAP to the 8th Circuit Court of Appeals.  The matter was argued October 17, 2008 and, as of the date of this Disclosure Statement, is under advisement.

Section 6.07   Class Action Complaint.  This action was begun in 1999 and was based on a contention that the company intentionally understated its liabilities in order to maintain the market value of the Debtor's common stock at an artificially high level.

Section 6.08   Buchanan Action.  Mr. Buchanan sued for alleged damages resulting from wrongful termination.  The loss claimed was not less than $13 million.

## ARTICLE VII.
## The Chapter 11 Case

Section 7.01   The only business activities in which Debtor and Acceptance have been engaged since the filing of this chapter 11 case have been the run off of the Acceptance claims and the pursuit of the litigation identified above.

Section 7.02   Attached as **Appendix "B"** are Debtor's year-end Operating Reports for 2005 through 2007 as well as Debtor's year-to-date Operating Report for 2008.  These Operating Reports disclose:

(a)   Comparative balance sheets;

(b)   A statement of income;

(c)   Sources and Uses of Cash;

(d)   Schedules of Post Petition Debt; and Bank Activity.

Section 7.03    Attached as **Appendix "A"** is the Summary of Schedules filed by the Debtor on January 7, 2005.  It identifies total assets of $33,069,446 and total liabilities of $137,110,126 as of that date.  **Appendix "A"** identifies Assets of $23,882,515 and Liabilities of $138,888,131 as of July 31, 2008.

Section 7.04    As of February 6, 2009 the register of claims filed with the Court identifying the amounts of the asserted claims and whether the claim is filed as secured, unsecured, priority or unknown indicates the following:

> Secured - $0.00
> Unsecured - $247,351,956.24
> Priority - $9,187.20
> Unknown - $17,723,659.78
> Total - $265,084,803.22

Section 7.05    In addition to the identified Assets and Liabilities, AICI may be able to benefit from intangible values discussed in the Means for Implementation of the Plan portion of this Disclosure Statement.


# ARTICLE VIII.
## Claims of the Trust Preferred Securities Holders


Section 8.01    On its Schedule F – Creditors Holding Unsecured Nonpriority Claims, Debtor lists AICI Capital Trust, C/O Deutsche Bank Trust Dept. 60 Wall St. 27th Fl – MS NYC60-2710, NY, NY 10005.  The listed principal is $94,875,000 and the listed interest is $20,184,998

Section 8.02    There is an issue as to whether the claims of the Trust Preferred Securities Holders are to participate in parity as holders of unsecured claims.  The Junior Subordinated Indenture dated June 2007 (the "Indenture") between Acceptance and the trustee named therein governs the rights of the holders of Acceptance's junior subordinated debt securities (the "Trust Preferred Securities").  Section 13.1 of the Indenture states that the payment of principal and interest on the Trust Preferred Securities is subordinate and subject in right of payment to the payment in full of all Senior Indebtedness.  The definition of Senior Indebtedness as set forth in the Indenture is as follows:

> "Senior Indebtedness" means, whether recourse is to all or a portion of the
> assets of the Company and whether or not contingent, (i) every obligation
> of the Company for money borrowed; (ii) every obligation of the
> Company evidenced by bonds, debentures, notes or other similar
> instruments, including obligations incurred in connection with the

acquisition of property, assets or businesses; (iii) every reimbursement obligation of the Company with respect to letters of credit, bankers' acceptances or similar facilities issued for the account of the Company; (iv) every obligation of the Company issued or assumed as the deferred purchase price of property of services (but excluding trade accounts payable or accrued liabilities arising in the ordinary course of business); (v) every capital lease obligation of the Company; (vi) every obligation of the Company for claims (as defined in Section 101(4) of the United States Bankruptcy Code of 1978, as amended) in respect of derivative products such as interest and foreign exchange rate contracts, commodity contracts and similar arrangements; and (vii) every obligation of the type referred to in clauses (i) through (vi) of another person and all dividends of another person the payment of which, in either case, the Company has guaranteed or is responsible or liable, directly or indirectly, as obligor or otherwise; provided that "Senior Indebtedness" shall not include (i) any obligations which, by their terms, are expressly stated to rank pari passu in right of payment with, or to not be superior in right of payment to, the Junior Subordinated Debentures, (ii) any Senior Indebtedness of the Company which when incurred and without respect to any election under Section 1111(b) of the United States Bankruptcy Code of 1978, as amended, was without recourse to the Company, (iii) any indebtedness of the Company to any of its subsidiaries,(iv) indebtedness to any executive officer or director of the Company, or (v) any indebtedness in respect of debt securities issued to any trust, or a trustee of such trust, partnership or other entity affiliated with the Company that is a financing entity of the Company in connection with the issuance of such financing entity of securities that are similar to the Preferred Securities emphasis added."

Section 8.03   The Plan provides for initiation of an adversary proceeding by the Proponent seeking a declaration of the relative priorities of the Trust Preferred Securities. The Plan separately classifies these claims with a provision for adjustment based on the outcome of that litigation.


## ARTICLE IX.
## Summary of the Plan

Section 9.01   This Article sets forth a description of the basic terms of the Plan. This description is not intended, nor should it be relied upon, to substitute for a careful review of the actual terms of the Plan itself.

**<u>The Responsible Officer</u>**.

Section 9.02   The Plan provides for the appointment of a Responsible Officer to carry out its terms.  Granite Re has nominated John Grant, Esq., an Omaha, Nebraska attorney to serve as the Plan's Responsible Officer.  Mr. Grant formerly served as General Counsel to the Nebraska Department of Insurance and for many years his specialty practice has focused on the law and business of insurance regulation.   Mr. Grant has agreed to serve as the Responsible Officer if so appointed by the Bankruptcy Court.

## Classification Of Claims And Interests

Section 9.03   Section 1122 of the Bankruptcy Code provides that, except for certain claims classified for administrative convenience, a plan may place a claim of a creditor or an interest of an equity holder in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

Section 9.04   The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment of its claim or interest. The Proponent believes that the Plan complies with this standard. The Plan divides Claims against and Interests in the Debtor into the following Classes

(a)   Class 1 consists of AICI Secured Claims.

(b)   Class 2 consists of AICI Priority Claims

(c)   Class 3 consists of AICI General Unsecured Claim

(d)   Class 4 consists of AICI Trust Preferred Securities Claims

(e)   Class 5 consists of all AICI Equity Interests

Section 9.05   For a description of the treatment of the Claims and Interests and a summary of distributions under the Plan, see Section 9.08 Treatment of Claims and Interests and Summary of Distributions under the Plan.

Section 9.06   A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class. A Claim or Interest may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

**ARTICLE X.**
**Treatment of Claims and Interests and Summary of Distributions under the Plan**

Section 10.01  The following table sets forth a brief summary of the classification of Claims and Interests. The information set forth in the table is for convenience of reference only.

| Class 1 | Secured Claims | Impaired | Entitled to Vote |
|---------|----------------|----------|------------------|
| Class 2 | Priority Claims | Unimpaired | Deemed to Accept - Not Entitled to Vote |
| Class 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Trust Preferred Securities | Impaired | Entitled to Vote |
| Class 5 | Equity Interests | Unimpaired | Deemed to Accept - Not Entitled to Vote |

## Provisions Governing Distributions

Section 10.02  Subject to Bankruptcy Rule 9010, all distributions under the Plan shall be made by the Responsible Officer pursuant to the terms and conditions contained in the Plan; provided, however, that no distribution shall be made on behalf of any Claim which may be subject to disallowance under section 502(d) of the Bankruptcy Code.

Section 10.03  Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable law, including section 1129(a) of the Bankruptcy Code, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

Section 10.04  Any payment to be made by the Responsible Officer pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion of the Responsible Officer, by draft, check, electronic funds transfer, or as otherwise required or provided in any relevant agreement or applicable law.

Section 10.05  To the extent that cash or other reasonably distributable assets are available, the Responsible Officer shall distribute such cash or other reasonably distributable assets to the holders of Allowed Claims entitled to distributions under the Plan; provided, however, that in no event shall the foregoing impair the right of the Responsible Officer to use reserve funds to satisfy the costs of administering the Plan including compensation for the Responsible Officer and the allowed costs of his professionals.  All payments shall be made in accordance with the priorities established by the Plan and in accordance with the terms and conditions of the Plan and the Confirmation Order.

Section 10.06  All distributions made to or for the benefit of the Class 4, Trust Preferred Securities shall be made to the Indenture Trustee, AICI Capital Trust, C/O Deutsche Bank Trust Dept. or its successor in interest.

**Delivery Of Distributions; Undeliverable Distributions**

Section 10.07  Distributions to holders of Allowed Claims and Allowed Interests shall be made by the Responsible Officer (a) at the addresses set forth on the proofs of Claim or Interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if the Debtors have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Responsible Officer after the date of any related proof of Claim or Interest, (c) at the addresses reflected in the Schedules if no proof of Claim or Interest has been filed and the Responsible Officer has not received a written notice of a change of address, or (d) at the addresses contained in the official records of the Debtor for the Indenture Trustee for the Trust Preferred Securities.  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Responsible Officer is notified, in writing, of such holder's then current address. Claims or Interests held by holders whose distributions are returned as undeliverable and who fail to notify the Responsible Officer of their respective correct addresses within one year after such distributions are returned to the Responsible Officer as undeliverable shall be expunged, after which date all unclaimed distributions  shall (i) revert to the estate free of any restrictions thereon and the Claims or Interests of any holder or successor to such holder with respect to such distribution shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  All undeliverable distributions that revert to the estate shall be used to satisfy the costs of administering the Plan and the and/or distributed to other holders of Allowed Claims or Allowed Interests on the Final Distribution Date. Nothing contained in the Plan shall require the Responsible Officer to attempt to locate any holder of an Allowed Claim or Allowed Interest.

## ARTICLE XI.
### Withholding and Reporting Requirements

Section 11.01  In connection with the Plan and all distributions hereunder, the Responsible Officer shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Responsible Officer shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

Section 11.02  The Responsible Officer may, but shall not be required to, set off against any Allowed Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Allowed Claim, claims, right and causes of action of any nature whatsoever that the Debtor may have against the holder of such Allowed Claim;

provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such holder, including, without limitation, any litigation claims. Nothing contained herein is intended or shall be construed to limit or otherwise affect any claims, defenses or rights of any Entity to setoff or recoupment. The Debtor, the Responsible Officer and Reorganized Industries expressly reserve all such claims, defenses and rights with respect to setoff and recoupment.

Section 11.03  Notwithstanding that the Allowed amount of any particular Claim may be reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or Allowed in an amount for which there is insufficient Cash in the relevant account to provide a recovery equal to that received by other holders of Allowed Claims in the relevant Class, no such holder shall have recourse against the estate, the Responsible Officer, or any of their respective professionals, or their successors or assigns, or the holder of any other Claim, or any of their respective  property.  Nothing in the Plan, however, shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

Section 11.04  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day and shall be deemed to have been completed as of the required date.

Section 11.05  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim.

**Implementation of the Plan**

Section 11.06  On the Effective Date, all right, title and interest in all of the Debtor's property and assets including without limitation, all rights and causes of action, whether arising by contract, under the Bankruptcy Code (including, without limitation pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code), under the Plan or under other applicable law, including, without limitation, all rights the Debtor have under the Plan, shall vest in the Debtor.  Provided, however, that until all terms of the Plan have been carried out and completed, the Responsible Officer shall have sole authority to direct the activities of the Debtor.

**ARTICLE XII.**
**Funding For the Plan**

Section 12.01  The Plan shall be funded in accordance with the provisions of the Plan from (a) Available Cash on the Effective Date and (b) Cash available after the Effective Date from, among other things, the liquidation of the Debtor's remaining assets and the prosecution and enforcement of litigation. All Available Cash realized from the

liquidation of the Debtors' remaining asset and the prosecution and enforcement of Litigation Claims, shall be maintained by the Responsible Officer for distribution to the holders of Allowed Claims as provided in the Plan.

Section 12.02  From and after the Effective Date, the Responsible Officer may establish or maintain one or more interest-bearing accounts as they determine may be necessary or appropriate to effectuate the provisions of the Plan consistent with section 345 of the Bankruptcy Code and any orders of the Bankruptcy Court.

Section 12.03  By Confirmation of the Plan, the Bankruptcy Court specifically approves and designates the Responsible Officer as the representative of the estate and the Debtor and finds that the Responsible Officer is acting on behalf of and for the benefit of the Creditors and Equity Interest Holders in accordance with the distribution scheme set forth in the Plan.  The Responsible Officer, as the representative of the estate and the Debtor, except as otherwise limited in the Confirmation Order, shall be vested with all property, rights, interests, and powers of the Debtor.  The Responsible Officer's rights and authority include, without limitation, all of the following:

(a)  control, management and disposal of all Assets for the benefit of the holders of Allowed Claims and Allowed Interests who may receive distributions under the Plan;

(b)  prosecution of litigation on behalf of the Debtors and/or the Estates and/or the Liquidating Trust, including preference, fraudulent conveyance, avoidance and other actions whether against insiders or any other third parties;

(c)  filing of objections to Claims or actions to subordinate Claims or

(d)  re-characterize debt as equity and the filing and pursuit of any other pleading, motion, stipulation or other item in connection with any matter arising under, in or in connection with the Chapter 11 Case;

(e)  filing of tax returns;

(f)  transfer (subject to Bankruptcy Court approval) of right, title and interest in and to any assets; and

(g)  undertake any other action in the best interests of the Debtor, the estate, and the creditors.

**Exemption From Certain Transfer Taxes**

Section 12.04  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers in the United States from the Debtor to any other Entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar

tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE XIII.
### Closing Of the Chapter 11 Case

Section 13.01  When substantially all remaining assets of the Debtor have been liquidated and converted into Cash (other than those assets abandoned by Debtor), and such Cash has been distributed in accordance with the Plan, the Responsible Officer shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE XIV.
### Rights of Action

Section 14.01  On and after the Effective Date, except as otherwise provided in the Plan, the Responsible Officer, on behalf of and as a court-appointed representative of the Debtor and for the benefit of each Estate, will, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, retain and become the holder of, and have the exclusive right to enforce any and all present or future litigation claims and any and all rights the Debtor that arose before or after the Commencement Date, including, but not limited to, rights, claims, causes of action, avoiding powers, suits and proceedings arising under Chapter 5 of the Bankruptcy Code, including, without limitation, any and all potential rights, claims and causes of action related to payments made by the Debtors prior to the Petition Date and disclosed in the Schedules. The Responsible Officer may pursue, abandon, settle or release any or all such rights of action pursuant to the terms of the Plan as he deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.

Section 14.02  The allowance of any Claim prior to the Effective Date shall not constitute a waiver of any claim against the holder of such Claim.

Section 14.03  As is set for the in the Plan, no provision of the Plan or this Disclosure Statement shall prohibit or otherwise limit the authority and standing of the Proponent to institute one or more actions seeking a determination of the nature, priority and allowed amount of the Claim(s) of the holders of Trust Preferred instruments.

## ARTICLE XV.
## Treatment of Executory Contracts and Unexpired Leases

Section 15.01  Except as otherwise provided in the Plan, on the Effective Date all executory contracts and unexpired leases that exist between Debtor and any Entity shall be deemed rejected as of the Confirmation Date, except for any executory contract or unexpired lease (a) which has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date or pursuant to the Confirmation Order, or (b) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date (except to the extent that any such motion is ultimately denied or withdrawn). Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases pursuant to the Plan.

Section 15.02  If the rejection of an executory contract or unexpired lease during the Chapter 11 Case (including any rejection of an executory contract or unexpired lease pursuant to the Plan) results in a Claim, then such Claim shall be forever barred and shall not be enforceable against any Debtor, or its assets unless a proof of Claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Proponent, (i) if such rejection is effective on or prior to the Confirmation Date, within 30 days after the Confirmation Date, or (ii) if such rejection is effective after the Confirmation Date, within 30 days after service of notice of such rejection

## ARTICLE XVI.
## Disputed, Contingent and Unliquidated Claims

Section 16.01  All objections to Claims (other than Professional Fee Claims) and Interests must be filed and served on the holders of such Claims and Interests by the Objection Deadline.

Section 16.02  From and after the Effective Date, the Responsible Officer shall have the exclusive right to make and file and continue prosecution of objections to the allowance, classification and/or amount of any Claim or Interest with the Bankruptcy Court, and shall serve such objections upon holders of each of the Claims and Interests to which objections are made by the Objection Deadline. The Responsible Officer is authorized and empowered, but not required, to resolve consensually any disputes regarding the allowance, classification and/or amount of any Claim or Interest. All objections by the Responsible Officer shall be litigated to a Final Order except to the extent the Responsible Officer, in his discretion, elects to withdraw any such objection, or compromise, settle or otherwise resolve any such objection, in which event the

Responsible Officer may settle, compromise or otherwise resolve any Disputed Claim or Interest without approval of the Bankruptcy Court.

Section 16.03  No payments or distributions will be made on account of a Disputed Claim or Disputed Interest, or, if less than the entire Claim or Interest is a Disputed Claim or Disputed Interest, the portion of a Claim or Interest that is Disputed, until such Claim or Interest becomes an Allowed Claim or Allowed Interest. On the Effective Date or as soon as practicable thereafter, the Liquidating Trustee shall reserve Cash in one or more Disputed Claims Reserves in an amount equal to the Face Amount of: (i) Disputed Administrative Claims asserted against each Debtor; (ii) Disputed Priority Tax Claims asserted against each Debtor; and (iii) Disputed Claims in Classes 1, 2, 3, 4, and 5; provided, however, that the Responsible Officer shall have the right to file a motion with the Bankruptcy Court to estimate, reduce or modify the amount to be reserved with respect to any such Disputed Claims. Each Disputed Claims Reserve shall be established and maintained in accordance with the provisions of the Plan.

## ARTICLE XVII.
### Estimation

Section 17.01  The Responsible Officer may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any contingent or unliquidated Claim at any time, including during litigation concerning any objection to such Claim.  In the event that the Bankruptcy Court so estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Responsible Officer may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanisms.

## ARTICLE XVIII.
## Payment of Certain Administrative Expense Claims, Fees and Expenses

Section 18.01  All final requests for compensation or reimbursement for Professionals pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date and Substantial Contribution Claims under section 503(b)(4) of the Bankruptcy Code must be filed with the Bankruptcy Court and served on the Responsible Officer and his counsel no later than 30 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court

Section 18.02  Objections, if any, to applications of such Professionals or other Entities for compensation or reimbursement of expenses must be filed and served on the Responsible Officer and his counsel and the requesting Professional or other Entity no later than 30 days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

Section 18.03  All requests for payment of an Administrative Claim incurred prior to the Effective Date other than those addressed at Section 15.01 must be filed with the Bankruptcy Court and served on counsel for the Responsible Officer and, if prior to the Effective Date, counsel for the Debtors and each Bankruptcy Committee no later than 30 days after the Effective Date. In the event that the Debtors or the Responsible Officer, as the case may be, object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

Section 18.04  All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation shall be paid on or before the Effective Date.

## ARTICLE XIX.
## Modifications of the Plan; Severability of Plan Provisions

Section 19.01  The Proponent reserves the right and in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Proponent may amend or modify the Plan in accordance with Section 1127 of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A holder of an Allowed Claim or Allowed Interest that is deemed to have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

Section 19.02  In the event that any Impaired Class shall not accept the Plan, at the written election of the Proponent filed with the Bankruptcy Court with respect to any one or more of said non-accepting Classes and any Classes junior to such non-accepting Classes, the Plan shall be modified and amended automatically and without further notice to provide such treatment, as determined necessary by the Bankruptcy Court, sufficient to assure that the Plan does not discriminate unfairly, and is fair and equitable, with respect to the Classes rejecting the Plan, and, in particular, the treatment necessary to meet the requirements of Sections 1129(a) and (b) of the Bankruptcy Code with respect to (i) the rejecting Classes and (ii) any other Classes adversely affected by such modifications. In particular, the treatment of any non-accepting Classes or adversely affected Classes shall be modified and amended from that set forth in Article IX, even if less favorable, to the minimum treatment necessary to meet the requirements of sections 1129(a) and (b) of the Bankruptcy Code.

Section 19.03  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Proponent, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Successors And Assigns, Revocation, Withdrawal, Non-Consummation, Injunctions**

Section 19.04  The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

Section 19.05  The Proponent reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date and to file subsequent plans of reorganization. If the Proponent revokes or withdraw the Plan, or if Confirmation or consummation does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Entity, (ii) prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor, or (iii) constitute an admission of any sort by the Debtor or any other Entity.

Section 19.06  Unless expressly modified or lifted by the Bankruptcy Court, all injunctions or stays provided for in the Chapter 11 Case, including in the Confirmation Order, under sections 105 or 362 of the Bankruptcy Code or otherwise, and effective on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Final Distribution Date.

## ARTICLE XX.
### Confirmation of the Plan

Section 20.01  The Bankruptcy Code requires a bankruptcy court to determine whether a plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code before such plan can be confirmed. It requires further that a debtor's disclosure statement concerning such plan is adequate and includes information concerning all payments made or promised by the debtor in connection with the plan. If the Plan is confirmed, the Debtors expect the Effective Date to occur as promptly as practicable after the Confirmation Date.  To confirm the Plan, the Bankruptcy Court must find that the requirements of the Bankruptcy Code have been met. Thus, even if the requisite vote is achieved for each Voting Class, the Bankruptcy Court must make independent findings respecting the Plan's conformity with the requirements of the Bankruptcy Code before it may confirm the Plan. Some of these statutory requirements are discussed below.

Section 20.02  Pursuant to the Bankruptcy Code, only holders of Allowed Claims or Allowed Interests that are Impaired under the terms and provisions of the Plan and that

receive distributions there under are entitled to vote for acceptance or rejection of the Plan. A holder of a Claim or Interest whose legal, equitable, or contractual rights are altered, modified or changed by the proposed treatment under the Plan or whose treatment under the Plan is not provided for in section 1124 of the Bankruptcy Code is considered Impaired. Pursuant to section 1126(f) of the Bankruptcy Code, holders of Claims and Interests that are Unimpaired are conclusively presumed to have accepted the Plan and are not entitled to vote. Votes on the Plan will be counted only in respect of Allowed Claims and Allowed Interests that (i) belong to a Voting Class or (ii) are otherwise permitted by the Bankruptcy Court to vote.

Section 20.03 The Bankruptcy Code defines acceptance of a plan by an Impaired class of claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of claims of that class that actually vote. Acceptance of a plan need only be solicited from holders of claims whose claims are Impaired and not deemed to have rejected the Plan. Except in the context of a "cram down" pursuant to section 1129(b) of the Bankruptcy Code, as a condition to confirmation of a plan the Bankruptcy Code requires that, with certain exceptions, each class of Impaired claims accepts the plan.

Section 20.04 In the event the requisite vote is not obtained, the Debtors have the right, assuming that at least one Class of Impaired Claims has accepted the Plan, to request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) permits confirmation of a plan notwithstanding rejection by one or more classes of impaired claims or impaired interests if the bankruptcy court finds that the plan does not discriminate unfairly and is "fair and equitable" with respect to the rejecting class or classes. This procedure is commonly referred to in bankruptcy parlance as "cram down." For a more detailed description of the requirements for acceptance of a plan and of the criteria for confirmation of a plan notwithstanding rejection by certain Impaired classes, see Article XXIV, Cram Down. The Plan is predicated on all Voting Classes voting to accept the Plan; however, if any Voting Classes vote to reject the Plan, the Debtors may request a "cram down" of such Classes at the Confirmation Hearing. In any event, the Debtors will seek a "cram down" of the Plan on Classes deemed to reject the Plan by virtue of receiving no distributions there under.

Section 20.05 At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied with respect to the Plan. Section 1129(a) of the Bankruptcy Code requires that, among other things, for a plan to be confirmed:

(a) The plan satisfies the applicable provisions of the Bankruptcy Code.

(b) The proponent of the plan has complied with the applicable provisions of the Bankruptcy Code.

(c) The plan has been proposed in good faith and not by any means forbidden by law.

(d) Any payment made or promised by the proponent under the plan for services or for costs and expenses in, or in connection with, the Chapter 11 case, or in connection with the plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the plan is reasonable, or if such payment is to be fixed after confirmation of the plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

(e) The proponent has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer or trustee of the debtor, an affiliate of the debtor participating in the plan with the debtor, or a successor to the debtor under the plan. The appointment to, or continuance in, such office of such individual must be consistent with the interests of creditors and equity security holders and with public policy and the proponent must have disclosed the identity of any insider that the reorganized debtors will employ or retain, and the nature of any compensation for such insider.

(f) With respect to each class of impaired claims or interests, either each holder of a claim or interest of such class has accepted the plan, or will receive or retain under the plan on account of such claim or interest, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code.

(g) Each class of claims or interests has either accepted the plan or is not impaired under the plan.

(h) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that allowed administrative expenses and priority claims (other than tax claims) will be paid in full on the effective date and that priority tax claims will receive on account of such claims deferred cash payments, over a period not exceeding six (6) years after the date of assessment of such claim, of a value, as of the effective date, equal to the allowed amount of such claim.

(i) If a class of claims is impaired, at least one impaired class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim in such class.

(j) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

Section 20.06  Subject to receiving the requisite votes in accordance with section 1129(a)(8) of the Bankruptcy Code and the "cram down" of Impaired Classes not receiving any distribution under the Plan, the Debtors believe that (i) the Plan satisfies all

of the statutory requirements of Chapter 11 of the Bankruptcy Code, (ii) the Debtors have complied or will have complied with all of the requirements of Chapter 11, and (iii) the Plan has been proposed in good faith. Set forth below is a more detailed summary of the relevant statutory confirmation requirements.

## ARTICLE XXI.
## Best Interests of Holders of Claims and Interests

Section 21.01  The "best interests" test requires that a bankruptcy court find either that all members of each Impaired class have accepted the plan or that each holder of an allowed claim or interest of each Impaired class of claims or interests will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date. Annexed as **Appendix "C"** (to be provided at a later date) is a liquidation analysis which demonstrates that the Plan satisfies the "best interests" test.

Section 21.02  The Proponent believes that, under the Plan, holders of Impaired Claims and Impaired Interests against the Debtors will receive property with a value equal to or in excess of the value such holders would receive in the event each of the Debtors was liquidated under Chapter 7 of the Bankruptcy Code.

Section 21.03  To estimate the likely return to holders of Claims and Interests in the event of a Chapter 7 liquidation of the Debtor, the Proponent has estimated the amount of liquidation proceeds that would be available for distribution and the allocation of such proceeds among the Classes of Claims and Interests based upon their relative priority. As further described below, to estimate the liquidation proceeds, the Proponent has assumed that the assets were sold in a straight liquidation. Liquidation proceeds available for distribution to holders of Claims and Interests would consist of the net proceeds from the disposition of such assets, augmented by other cash held by the Debtor. The relative priority in the distribution of liquidation proceeds with respect to any Claim or Interest depends upon (i) its status as secured, priority unsecured, non-priority unsecured or equity, and (ii) its relative subordination.

Section 21.04  In general, the liquidation proceeds for the Debtor will be allocated in the following priority:

(a)  first, to the Claims of any secured creditors of the Debtor to the extent of the value of their collateral;

(b)  second, to the costs, fees and expenses of the liquidation, as well as other administrative expenses of Debtors' Chapter 11 case, including certain tax liabilities;

(c)  third, to Priority Tax Claims and other Claims entitled to priority in payment under the Bankruptcy Code;

(d)  fourth, to the General Unsecured Claims;

(e)  fifth, to the holders of Trust Preferred Claims; and

(f)  sixth, to Debtor's equity holders.

Section 21.05  **Appendix "C"** (to be provided at a later date) is Proponent's analysis of the estimated liquidation value of Debtor's assets in the event of a hypothetical Chapter 7 liquidation by a trustee.  Of necessity this Chapter 7 liquidation analysis is based upon numerous estimates and assumptions that, although considered reasonable by the Proponent, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Proponent, the Responsible Officer and the Debtor. This liquidation analysis is also based upon assumptions with regard to liquidation decisions that are subject to change. Accordingly, there can be no assurance that the values reflected in the liquidation analysis would be realized if the Debtor was, in fact, to undergo such a liquidation.

Section 21.06  The estate's primary asset is its 100% stock ownership of its subsidiary, Acceptance Insurance Company (herein "AIC").  As is outlined above, AIC is in statutory rehabilitation in Nebraska.  Any sale of the AIC stock is subject to the approval of the Nebraska Department of Insurance.  The Proponent has been in talks with AIC's deputy liquidator to work toward structuring such a sale of AIC.


# ARTICLE XXII.
## Financial Feasibility

Section 22.01  Section 1129(a)(11) of the Bankruptcy Code requires the Confirmation not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Plan). The Plan is a liquidating plan of reorganization. Thus, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

## ARTICLE XXIII.
## Acceptance by Impaired Classes

Section 23.01  A class is impaired under a plan unless, with respect to each claim or interest of such class, the plan (i) leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder of such claim or interest; or (ii) notwithstanding a demand for accelerated payment (a) cures any default and reinstates the maturity of the obligation; (b) compensates the holder of such claim for damages incurred on account of reasonable reliance on contractual provisions; and (c) does not otherwise alter legal, equitable or contractual rights. A class that is not impaired under a plan of reorganization is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.

## ARTICLE XXIV.
## Cram Down

**THE PROPONENT RESERVES THE RIGHT TO CRAM DOWN THE PLAN ON NONACCEPTING CLASSES OF CLAIMS AND INTERESTS.**

Section 24.01  The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted the Plan. The "cram down" provisions of the Bankruptcy Code are set forth in section 1129(b) of the Bankruptcy Code. Under the "cram down" provisions, upon the request of a plan proponent a bankruptcy court will confirm a plan despite the lack of acceptance by an impaired class or classes if the bankruptcy court finds that (i) the plan does not discriminate unfairly with respect to each nonaccepting impaired class, (ii) the plan is fair and equitable with respect to each non-accepting impaired class, and (iii) at least one impaired class has accepted the plan. These standards ensure that holders of junior interests, such as common stockholders, cannot retain any interest in the debtor under a plan that has been rejected by a senior class of impaired claims or interests unless such impaired claims or interests are paid in full.

Section 24.02  As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to bankruptcy law. A plan does not discriminate unfairly if claims or interests in different classes but with similar priorities and characteristics receive or retain property of similar value under a plan.

Section 24.03  The Bankruptcy Code sets forth different standards for establishing that a plan is "fair and equitable" with respect to a non-accepting class, depending on whether the class is comprised of secured or unsecured claims or interests. In general, section 1129(b) of the Bankruptcy Code permits confirmation notwithstanding non-acceptance by an impaired class if that class and all junior classes are treated in accordance with the "absolute priority" rule, which requires that the dissenting class be paid in full before a

junior class may receive anything under the plan. In addition, case law surrounding section 1129(b) requires that no class senior to a non-accepting Impaired class receives more than payment in full on its claims.

Section 24.04  With respect to a Voting Class that does not accept the Plan, the Proponent must demonstrate to the Bankruptcy Court that either (i) each holder of an unsecured Claim in the non-accepting Voting Class receives or retains under such Plan property of a value equal to the allowed amount of its Claim, or (ii) the holders of Claims or holders of Interests that are junior to the Claims in such non-accepting Voting Class will not receive or retain any property under the Plan. Additionally, the Proponent must demonstrate that the holders of Claims that are senior to the Claims of the nonaccepting Voting Class receive no more than payment in full on their Claims under the Plan.

Section 24.05  If all the applicable requirements for confirmation of the Plan are met as set forth in sections 1129(a)(1) through (16) of the Bankruptcy Code, except that one or more of the Voting Classes have failed to accept the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code, the Proponent reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. The Proponent believes that the Plan satisfies the "cram down" requirements of the Bankruptcy Code. The Proponent may seek confirmation of the Plan over the objection of non-accepting Voting Classes, as well as over the objection of individual holders of Claims who are members of an accepting Voting Class. In addition, the Proponent intends to seek "cram down" of the Plan on the Classes deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code by virtue of receiving no distributions there under. Nevertheless, there can be no assurance that the Bankruptcy Court will determine that the Plan meets the requirements of section 1129(b) of the Bankruptcy Code.

## ARTICLE XXV.
### Classification of Claims and Interests

Section 25.01  The Proponent believes that the Plan meets the classification requirements of the Bankruptcy Code which require that a plan place each claim or interest into a class with other claims or interests which are "substantially similar."

## ARTICLE XXVI.
### Effect of Confirmation of the Plan

Section 26.01  The Confirmation Order shall not discharge the Debtor from any debt or liability that arose before Confirmation, as provided in section 1141(d)(3)(A) of the Bankruptcy Code.

Section 26.02  Subject to limitations required by applicable ethical rules and standards of conduct, none of the Debtor, the Proponent, the Responsible Officer, the Creditors'

Committee, nor any of their respective present or former members, officers, directors, employees, advisors, or attorneys shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission from and after the Petition Date in connection with, relating to, or arising out of, the Chapter 11 Case, the commencement of the Chapter 11 Case, the administration of the Chapter 11 Case, the pursuit of and the approval of the sales of any of the Debtor's assets (and any related asset purchase agreement), the formulation, negotiation or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful misconduct; provided, however, any present or former officer or director of the Debtor shall be liable to any holder of a Claim or Interest, or any other party in interest, or any of their successor or assigns, for: (i) any breach of such person's duty of loyalty to the Debtor, (ii) any act or omission not in subjective good faith or which involves intentional misconduct or a knowing violation of law, and (iii) any transaction for which such person derived an improper benefit, and in all respects such persons shall be entitled to reasonably rely upon the advice of the Debtor's counsel (including in-house counsel) with respect to their duties and responsibilities under the Plan.

Section 26.03  The exculpatory provisions contained in Section 10.3 of the Plan (i) shall not limit the claims and rights, if any, of the United States, and (ii) shall apply to any person or entity who was not the beneficiary of a post-petition indemnification obligation of the Debtors only to the extent provided in Section 10.3 of the Plan.  Any claims that would otherwise be subject to the exculpatory provisions contained in Section 10.3 of the Plan but for the provisions of Section 10.3 of the Plan may only be asserted in the Bankruptcy Court and only if filed on or before ninety days after the Effective Date.  In the event that any such claims are not filed timely in the Bankruptcy Court, the exemption contained in Section 10.3 of the Plan shall be terminated with respect to such claims, and such claims shall be deemed subject to the exculpatory provisions contained in Section 10.3 of the Plan.

Section 26.04  Any non-exculpated claims against the parties set forth in Section 10.3 of the Plan arising from or related to the matters set forth in Section 10.3 of the Plan may only be asserted and filed in the Bankruptcy Court.

Section 26.05  The Bankruptcy Court shall retain exclusive jurisdiction to determine all matters arising from or related to claims against the parties set forth in Article XI of the Plan arising from or related to the matters set forth in Article XI of the Plan.

Section 26.06  The Proponent is not aware of any claims, meritorious or otherwise, that are being exculpated under the Plan.

Section 26.07  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims against and Interests in the Debtor, their respective successors and assigns and all other parties-in-interest in this Chapter 11 Case.

Section 26.08  Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law.


**ARTICLE XXVII.**
**Certain Factors to be Considered**


**HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE), PRIOR TO VOTING TO ACCEPT OR TO REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.**

Risk That Distributions May Be Less Than Estimated By the Proponent

Section 27.01  The distributions and recoveries set forth in this Disclosure Statement are based on the Proponent's estimate of Allowed Claims as reflected in the Court's Claims Register.  The Proponent projects that the Claims asserted against Debtor will be resolved in and reduced to an amount that approximates Proponent's estimates and may seek an order or orders from the Bankruptcy Court estimating the maximum dollar amount of Allowed Claims and Disputed Claims or otherwise determining and fixing the amount of the Disputed Claims Reserve. This estimate will be used to calculate and fix distributions to holders of Allowed Claims.  Such a procedure may also be utilized, in the sole discretion of the Responsible Officer, for Administrative Claims, Other Priority Claims, Priority Tax Claims and/or other Claims. There can be no assurance, however, that such estimates will prove accurate. The Proponent does not believe that these risks pose a bar to confirmation of the Plan.

Section 27.02  In addition, there exists the potential that holders of certain Claims that the Proponent and/or the Responsible Officer contend constitute General Unsecured Claims will assert that such Claims constitute Administrative Claims. To the extent that any of such Claims are ultimately adjudicated to be Allowed Administrative Claims, the distributions could significantly and materially differ from the actual distributions made

under the Plan. If and to the extent the Proponent has underestimated the amount of any Allowed Claims or any Administrative Claims, Other Priority Claims or Priority Tax Claims, the Responsible Officer could be required to redirect available cash resulting in a potential dilution of available cash. Therefore, the distributions discussed herein could significantly and materially differ from the actual distributions made under the Plan. Distributions will also be affected by the following: (i) the amount of available cash the Debtor is able to realize from the pursuit of litigation; (ii) the amount of Allowed Claims for rejected contracts and leases that have not yet been formally asserted against the Debtor; (iii) the amount of Allowed Administrative Claim that have not yet been asserted against the Debtor; (iv) the amount of Allowed Priority Tax Claims may be greater than estimated by the Debtor; and (v) the costs of continuing to administer the Chapter 11 Cases and wind down the Debtor's business or that of AIC.

Section 27.03  The Proponent reserves the right to object to the amount or classification of any Claim. Thus, the estimates set forth in this Disclosure Statement cannot be relied upon by any holder of a Claim whose Claim is subject to a successful objection. Any such holder may not receive the estimated distributions set forth herein.

Section 27.04  If the Plan is not confirmed and consummated, there can be no assurance that the Chapter 11 Case will continue rather than be converted to a liquidation under Chapter 7 of the Bankruptcy Code or that an alternative plan would be on terms as favorable to the holders of Allowed Claims and Allowed Interests as the terms of the Plan.

Section 27.05  Pursuant to the "cram down" provisions of section 1129(b) of the Bankruptcy Code, the Bankruptcy Court can confirm the Plan without the acceptances of all Impaired Classes, so long as at least one Impaired Class of Claims has accepted the Plan.

Section 27.06  Except to the extent that the Debtors' assets have already been liquidated, the Responsible Officer's ability to make the distributions described in the Plan depends on the liquidation of the balance of Debtors' assets. Although the Responsible Officer will endeavor to liquidate assets as expeditiously as possible and in such a manner as to maximize the Cash realized from such liquidation, the Proponent cannot warrant either the timing or the amount of distributions under the Plan.

Section 27.07  The Proponent has not completed its analysis of possible claims that may ultimately be pursued by the Responsible Officer, including but not limited to fraudulent conveyance and other avoidance actions, fraud claims and breach of fiduciary duty claims. The Responsible Officer will pursue all or certain of these or other claims in accordance with the provisions of the Plan and the Confirmation Order. The costs of pursuing such litigation will be paid out of Cash available to the Estate and there can be no assurances that the Responsible Officer will prevail in such litigation. In addition, objections to certain Claims may require separate litigation. Accordingly, although

recoveries on causes of action may enhance distributions, the distributions currently projected by the Proponent may be reduced by the costs of such litigation.

## ARTICLE XXVIII.
### Conclusion

Section 28.01  The Proponent urges holders of Claims and Interests in the Voting Classes to vote to accept the Plan and to evidence such acceptance by returning their completed and signed Ballots so they will be received by the Balloting Agent not later than the Balloting Deadline.

Dated: February 9, 2009.

GRANITE REINSURANCE COMPANY

By: */s/ Alan G. Symons*
Name: Alan G. Symons
Title: Authorized Signatory

Robert F. Craig #10819
Jenna Taub #22725
Robert F. Craig, P.C.
1321 Jones Street
Omaha, NE  68102
Phone:  (402) 408-6000
Fax:  (402) 408-6001

COUNSEL FOR GRANITE REINSURANCE COMPANY

APPENDIX A

Summary of Schedules


APPENDIX B

Debtor's year-end Operating Reports


APPENDIX C

Liquidation Analysis for the Debtor (to be provided at a later date)


APPENDIX D

Statutory Statement

Acceptance Insurance Company, September 30, 2008